UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JUNE BRANSON, individually as surviving
spouse, and on behalf of the Estate of John
Branson, decedent,

            Plaintiff,

v.                                                    Case No. 5:06-cv-332-Oc-10GRJ

MEDTRONIC, INC., MEDTRONIC USA, INC.,

            Defendants.
_____

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Plaintiff's Motion To Remand. (Doc. 5.) Defendants have filed a memorandum in opposition to Plaintiff's motion (Doc. 6) and, therefore, the matter is ripe for the Court's review. For the reasons discussed below, Plaintiffs' Motion To Remand is due to be **DENIED**.

## I. BACKGROUND

On August 7, 2006, Plaintiff filed a complaint in the Circuit Court, for the Fifth Judicial Circuit, In And For Marion County, Florida against Medtronic, Inc. ("Medtronic") and Medtronic USA, Inc. ("Medtronic USA") alleging that the Defendants' faulty implantable cardiac resynchronization therapy defibrillator ("CRT-D") caused the death of Plaintiff's husband. Plaintiff's complaint purports to allege claims for strict liability, negligence, negligent misrepresentation, breach of implied and express warranties,

---

[1]Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

fraud by concealment, wrongful death, loss of consortium, and violation of Florida's Deceptive And Unfair Trade Practices Act ("FDUPTA"). Because Plaintiff's complaint was filed in state court the demand for damages only recites that the damages exceed $15,000.00, the jurisdictional threshold for bringing claims in the state circuit court. Further, Plaintiff alleges in the *ad damnum* clause in the Complaint damages for pain and suffering, loss of enjoyment of life, extreme mental anguish, past and future medical expenses, economic damages, costs, pre-and post-judgment interest, and attorney's fees.

On September 14, 2006, Defendants timely removed this action to federal court on the basis of diversity of citizenship under 28 U.S.C. §1332, alleging that Plaintiff is a citizen of Florida and that Defendants are both citizens of Minnesota because that is the state where the Defendants are incorporated and the state where the Defendants maintain their principal places of business.

Plaintiff requests that the Court remand the action to state court contending that the Defendants have not met their burden of establishing that the amount in controversy exceeds $75,000.00 and that complete diversity is lacking because the principal place of business of Medtronic USA is in Florida. The Court will address each issue in turn.

## II. **DISCUSSION**

Where, as here, a plaintiff has objected to a defendant's removal, the burden of proof is on the defendant, as the removing party, to prove by a preponderance of the evidence that the action was properly removed.[2] Because removal jurisdiction raises

---

[2] Kirkland v. Midland Mortgage Company, 243 F.3d 1277, 1281 n. 5 (11th Cir. 2001). The "preponderance of the evidence" standard is applicable in those cases where the defendant exercises his

(continued…)

significant federalism concerns, federal courts are directed to construe removal statutes strictly and doubts about jurisdiction should be resolved in favor of remand to state court.[3] Whether an action may be removed to federal court is determined from the record before the court at the time the notice of removal was filed in federal court.[4]

**A. <u>Defendants' Principal Place Of Business</u>**

A corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business.[5] The Eleventh Circuit has adopted the "total activities" test for analyzing where a corporation's principal place of business is located for determining citizenship of the corporation.[6] The "total activities" test incorporates both the "place of activities" test, which focuses on the location of the majority of the corporation's sales or production activities, and the "nerve center" test, which focuses

---

[2](…continued)
statutory right to remove a case to federal court, as the defendant has removed the case to federal court and therefore has the burden to establish the basis for jurisdiction upon removal. On the other hand, a plaintiff "is still the master of his own claim," and, in cases that originate in federal court, the court, in evaluating a plaintiff's claim for damages and whether that claim is due to be dismissed for lack of subject matter jurisdiction, must determine whether it appears to a "legal certainty that plaintiff's claim is actually for less than the jurisdictional amount." <u>Burns v. Windsor Insurance Co.</u>, 31 F.3d 1092, 1094-95 (11th Cir. 1994).

[3] <u>Diaz v. Sheppard</u>, 85 F.3d 1502, 1505 (11th Cir. 1996), *cert. denied* 117 S.Ct 1349, 520 U.S. 1162, 137 L.Ed. 2d 506.

[4] 14 Wright, Miller & Cooper § 3734 Federal Practice and Procedure (updated through 2006).The Eleventh Circuit has announced that the district court's inquiry is not limited to just the complaint. <u>Williams v. Best Buy Co., Inc.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001) (stating that the Court adopts the approach of the Fifth and Ninth Circuits that when a complaint does not claim a specific amount of damages and the jurisdictional amount is not facially apparent form the complaint, the court should look at the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed).

[5] 28 U.S.C. § 1332(c)(1); <u>MacGinnitie v. Hobbs Group, LLC</u>, 420 F.3d 1234, 1239 (11th Cir. 2005).

[6] <u>MacGinnitie</u>, 420 F.3d at 1239.

on the location of the corporate offices.[7] "Where a company's activities are not concentrated in one place, a district court is entitled 'to give these nerve-center-related facts greater significance' in determining principal place of business."[8]

Plaintiff's sole argument that the principal place of business of Medtronic USA is in Florida is based upon the fact that the Miami, Florida office of Medtronic USA is listed on its web-site as the headquarters for "Medtronic's" Latin American operations. Plaintiff contends that the CRT-D involved in this case was manufactured in Puerto Rico by Medtronic USA and distributed to the decedent's physician through that Florida office. Based upon this information, Plaintiff concludes that Florida is the principal place of business for Medtronic USA and therefore there is not complete diversity of jurisdiction in this case.

Defendants argue that under either the "place of activities test" or the "nerve center test" Florida does not qualify as a principal place of business for Medtronic USA. In support of their position, Defendants have filed an affidavit and other supporting material detailing both the location where the activities for the corporations take place as well as where the nerve center for Medtronic USA is located.

Turning to the first prong for determining the citizenship of a corporation - where the corporation is incorporated - it is undisputed that Medtronic USA is incorporated under the laws of Minnesota.[9] Therefore, the only issue in dispute is the location of the principal place of business of the Defendants.

---

[7] Id.

[8] Id. (citing Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005)).

[9] See Doc. 6, Exhibit "A"

4

Turning to the "place of activities test," Defendants argue that the Miami, Florida office of Medtronic USA has nothing to do with the manufacture, design or production of the allegedly defective CRT-D. As evidenced by the affidavit of Tim Samsel, the Vice President of Cardiac Rhythm Disease Management Regulatory Affairs of Medtronic, Inc., Medtronic USA is a wholly owned subsidiary of Medtronic, Inc.[10] Medtronic USA is principally responsible for the sales and distribution of Medtronic products and does not handle any aspect of the design, manufacture or production of the CRT-D.[11] The Miami, Florida office of Medtronic USA is not a "global headquarters," but rather houses the office for its Latin American Operations.[12] Most notably, the Latin American operations do not control the manufacturing facilities in Puerto Rico - and after the CRT-D is assembled in Puerto Rico or Switzerland - the CRT-D is then shipped to Medtronic's distribution centers in Minnesota as well as other distribution centers outside of the United States.[13]

Based upon this sworn evidence, Defendants have established that there is no involvement by the Miami, Florida office with regard to the design of the product and that the Miami, Florida office has nothing to do with the manufacture or production of any of the CRT-D's in Puerto Rico. Thus, as confirmed by the affidavit of Tim Samsel, all of the decision-making and day-to-day activities regarding Defendants' CRT-D's occur in Minnesota at Defendants' main office.

---

[10] See Doc. 6, Exhibit "B"

[11] Id.

[12] Id. at ¶¶ 10-11.

[13] Id. at ¶ 12.

Indeed, the web-site relied upon by Plaintiff to support her argument is consistent with Defendants' position that the Miami office has nothing to do with the develpment or manufacture of the subject device. The web-site lists in detail the locations of Medtronic's manufacturing facilities, service centers and research and development facilities, and the Miami office is conspicuously absent from the list of these locations.

Additionally, as Defendants argue, even if the "nerve center" test was applied the result would be the same. The records from the Florida Department of State, Division of Corporations disclose that all six of the officers and directors of Medtronic USA are located in Minneapolis, Minnesota.[14]  Further, all of its company directives, guidelines, policies and procedures are generated at its Minnesota location.[15] According to Defendants, there are no documents located at the Miami office related to the design, manufacture or production of the CRT-D and there are no persons in the Miami office with knowledge related to the design, manufacture, or production of the CRT-D.[16]  Most notably, the evidence filed by Defendants establishes that Medtronic USA has no role in controlling the Puerto Rico manufacturing facility.[17]

Simply put, the Defendants have met their burden of showing by a preponderance of the evidence that the principal places of business of Medtronic USA and Medtronic are in Minnesota and that the Miami, Florida office of Medtronic USA is not a principal place of business for determining the citizenship of Medtronic USA.

---

[14] Doc. 6, Exhibit "A"; *see also,* Exhibit B, ¶8.

[15] Doc. 6, Ex. B ¶ 9.

[16] Id. ¶¶ 11 and 12.

[17] Id. ¶ 10.

Accordingly, the Court concludes that there is complete diversity of citizenship between the Plaintiff and the Defendants as required by 28 U.S.C. §1332.

B. **Amount in Controversy**

Although the Plaintiff never specifically states - or even implies - that the damages sought in this case are less than $75,000, Plaintiff, nonetheless, argues that the case should be remanded because Defendants have failed to meet their burden of proof of establishing that the amount in controversy exceeds $75,000.00.

In determining whether the Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $75,000 the Court may rely upon plaintiff's complaint, the information contained in the notice of removal, and any other relevant materials in the record.[18]

In this case, Plaintiff's Complaint alleges an unspecified amount of damages "in excess of $15,000.00," which is the jurisdictional threshold for establishing jurisdiction in the state's circuit court. Where the $75,000.00 federal jurisdictional amount is not facially apparent from the complaint, the Court should "look to the notice of removal and may require evidence relevant to the amount in controversy."[19]

Having examined the record in this case - including the allegations in the Complaint, and the other information and materials filed by Defendants - the Court concludes that the question of whether the amount in controversy in this case exceeds

---

[18] Landmark Tower Associates v. First National Bank of Chicago, 439 F.Supp. 195, 196 (S.D. Fla. 1977) (citing Villareal v. Brown Express, Inc., 529 F.2d 1219, 1221 (5th Cir. 1976).

[19] Williams v. Best Buy Company, Inc., 269 F. 3d 1316, 1319 (11th Cir. 2001)

$75,000.00 is not even close. The following reasons independently establish that this lawsuit involves claimed damages well in excess of $75,000.00

First, as Defendants point out, this case is one of approximately twenty-seven cases currently pending in the various district courts in Florida brought by the same counsel, involving the same product liability claims relating to the same CRT-D.[20] The damages in each of those cases are alleged to be in excess of $75,000.00 in order for those cases to have been filed in or removed to federal court.

Second - while the Court recognizes that the claims of each of the plaintiffs in the other twenty-seven cases will vary to some degree - in this case the damages claimed by the Plaintiff concern allegations that the device repeatedly failed to function properly ultimately leading to a fatal congestive heart failure that was the cause of death of Plaintiff's husband. Plaintiff's complaint demands damages for her husband's physical pain and suffering, loss of enjoyment of life, extreme mental anguish, past medical expenses, loss of future earnings, loss of net accumulations, funeral expenses as well as damages for Plaintiff's own loss of companionship. The Court is hard-pressed to conclude that if liability was established in this case there is any possibility that the damages would be less than $75,000.00.

However, independent of the fact that the claimed damages in a wrongful death case like this one would - with certainty - be far in excess of $75,000.00, the fact that Plaintiff has included a claim for attorney's fees in her claim in the Complaint for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), also establishes that the amount in controversy exceeds the jurisdictional threshold.

---

[20] *See*, Doc. 6, Exs. D and E.

"Where," as here, "a grant of attorney's fees is specifically allowed by statute as an additional award, such fees are considered part of the amount in controversy for jurisdictional purposes."[21]

Because a prevailing party is entitled to recover reasonable attorney's fees from the nonprevailing party in a claim under FDUPTA,[22] the Court is required to consider the amount of attorney's fees Plaintiff could recover, if successful, when determining the amount in controversy for jurisdictional purposes.

This case concerns fairly complex claims for product liability based upon allegations that the medical device used by Plaintiff's husband was defective and that the Defendants made misrepresentations and/or omitted to make material disclosures concerning the alleged defects in the product that led to the untimely death of Plaintiff's husband. Assuming the case was litigated through trial, the attorney's fees incurred by Plaintiff would be well in excess of the jurisdictional threshold for this Court. Indeed, the attorney's fees for the time spent by Plaintiff's counsel just preparing the case for trial and trying this case - and excluding the substantial time that would be involved in discovery and developing the expert evidence in this case - would be well in excess of $75,000.00.

Accordingly, either viewing the claimed damages in this case alone or viewing the demand for statutory attorney's fees alone, there cannot be any good faith dispute that the amount in controversy in this case exceeds $75,000.00 and that the Defendants

---

[21] Missouri State Life Insurance v. Jones, 290 U.S. 199 (1933); Graham v. Henegar, 640 F.2d 732, 736 n. 9 (5th Cir. 1981).

[22] See, Florida Statutes § 501.2105(1)

have sufficiently met their burden of establishing that the amount in controversy in this case is well in excess of the jurisdictional threshold necessary to establish diversity jurisdiction.

### III.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiffs' Motion To Remand (Doc. 5) should be **DENIED**.[23]

**IN CHAMBERS** in Ocala, Florida, on December 13, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
The Honorable Wm. Terrell Hodges
Senior United States District Judge

Counsel of Record

---

[23] Because the record was more than sufficient for the Court to consider whether the Defendants had met their burden to establish that the Court has subject matter jurisdiction, and that Plaintiff's Motion To Remand should be **DENIED**, Plaintiff's Request For Leave To File Reply to Defendants Memorandum in Opposition to Remand (Doc. 7) is due to be **DENIED** as moot.